## PROVIDENCE COUNTY.

---

MARIUS S. DANIELS *vs.* HERBERT ALMY *et al.*

Title to land between Custom House street and Aborn's gangway in the city of Providence.

To make, by direct deed to the city, a valid dedication of land to highway purposes all the tenants in common owning the land must join in the deed.

Dedication of land to highway purposes may be inferred from the assent of the owners, if the assent is given in such circumstances as to show their ultimate purpose of making it a public highway instead of retaining private rights in it.

BILL IN EQUITY for partition.    On respondents' petition for a new trial of issues submitted to a jury.

*April* 19, 1893.    DOUGLAS, J.    This is a petition for a new trial of issues sent to a jury in the suit in equity now pending in this court, wherein Marius S. Daniels, now deceased, was originally complainant, and his successors in title now appear by amendment to the bill of complaint, and Herbert Almy and others, successors in title of Humphrey Almy, deceased, are respondents.    The bill asks for the partition of a strip of land in the city of Providence bounding northerly forty feet on Custom House street, and extending southerly, of that width, thirty-six feet ; bounded easterly by land of the respondents, and westerly by land of the complainants.    This strip was owned by Humphrey Almy and Marius S. Daniels, as tenants in common, as was decided in *Almy* v. *Daniels*, 11 R. I. 250, affirmed in *Almy* v. *Daniels*, 15 R. I. 312, 17 R. I. 543, and is now so owned by the parties to this suit.    The westerly half of this strip is covered by a brick building erected and occupied by the complainant's ancestor.    The respondents contend that the easterly half is a public highway and that they are entitled to have it kept open, furthermore, as against the complainants, because their ancestor was induced to purchase the land next easterly by promises or representations that this whole strip of forty feet in width should be so kept for use of the estate then purchased by him.    Upon the issues of fact raised by the defendants' answer the jury returned a verdict as follows :

1.    The jury find that at the time the complainant's bill of complaint was filed in this court the public had not the easement of a public highway over the easterly twenty feet of the lot of land mentioned in said bill.

2.    That it was not a part of the consideration and inducement held out to said Almy for the purchase by him of the four feet of land conveyed by the deed of Bailey to him dated May 3, 1851, that there should always be an open space or

gangway there between the estate of said Almy on the east, and that of said Bailey, now owned by the complainant, on the west, which might be used in connection with the granted premises, whether the city of Providence should lay the same out as a highway or not.

The respondents now bring their petition for a new trial of these issues, alleging : That the verdict is against the evidence ; that the presiding justice erred in the admission and exclusion of evidence, and in refusing to charge as requested ; and, that complainant's counsel, in reading testimony to the jury, suppressed a material part of an answer of the witness.

The land in question is shown upon a plat opposite page 250 of R. I. Reports, vol. 11, and the conveyances of this land by the parties, whose interests are now represented by the parties to this suit, are detailed in the opinion of the court in the case there reported. These deeds and the depositions taken in that case were put in evidence in this one, and further evidence was submitted relating mainly to the use of this strip of land by tenants of the adjacent buildings and others, and to the acts of the persons from whom the parties here derive their estates.

It appeared from all this evidence that in 1851, the owners of this land and the owners of the lands intervening between it and the northerly end of Pine street, with the exception of Thomas Harkness, desired that Pine street should be extended northerly to Long Wharf street, now Custom House street; so that the northerly thirty-six feet of Pine street should coincide with the strip in question. Deeds were made between April 28 and May 5, which added four feet in width on the west line of Almy's estate, and brought his land up to the east line of the proposed street, and which conveyed the land in question to Mead, Aborn, Bailey and Almy, in the proportions in which they had contributed the purchase money therefor. On May 5, 1851, therefore, we find the land in dispute owned by Almy 7-27, and by the other parties whose titles have come to the complainants in this case 20-27, all these parties being then bound to allow the city to lay out the same as a public street in continuation of Pine street.

The proceedings on behalf of the city for the lay out of the forty feet street having failed, the parties who had agreed to that lay out do not appear to have made any subsequent agreement in which all have joined.

Harkness sold to the city so much of his land as was covered by the easterly twenty feet in width of the proposed street, and Aborn and Mead conveyed to the city a strip twenty feet wide across their lands in continuation thereof, but Almy would not agree with his co-tenants to any lay out across the land in question different from the proposed extension of forty feet wide, and so no written agreement or conveyance of this strip or any part of it has ever been made by all the owners of it acting together. We cannot find that any of the owners of this strip have ever claimed, until the filing of this bill, that any agreement had ever been made which applied to the easterly twenty feet and not equally to the westerly twenty feet. Almy in his first suit against Daniels, 11 R. I. 250, claimed that the agreement between the parties was for a private way forty feet wide, and the court found that the agreement was for a public street in continuation of Pine street. In a bill brought by him against Mead, filed November 9, 1870, he claims that the agreement between the parties was for a street forty feet wide in continuation of Pine street. His executor in a suit at law against Daniels, reported in 15 R. I. 312, contended that the whole strip, forty feet wide, should be kept open. The contention now is that it was the intention of the parties to dedicate to the public the southerly twenty feet of this land, and it is argued that the complainants are estopped to deny the dedication by the deeds under which they claim and other deeds made by their ancestors in title, and that the fact of dedication is proved by the acts of the parties and the use which they have permitted the public to make of the premises. So far as the agreement of 1851 is concerned we have no doubt it was entirely dependent upon the acceptance by the city of the plan then in the minds of the parties.

The condition, which was the essential thing upon which the carrying out of that agreement depended, having failed,

the agreement failed with it.   The owners of this strip of land, after the discontinuance of the proceedings for the lay out of Pine street, were in the same condition with respect to it as far as their mutual agreements are concerned that they would have occupied if the city had accepted the street and subsequently abandoned it declaring it no longer useful as a public highway.   We think also that while the project was in abeyance all the conveyances made by the parties in which they refer to this land as a "street," or as a "proposed street," etc., must be read in the light of the circumstances as implying the happening of the event on which the whole arrangement was conditioned and can not be construed as estopping them or their successors who took after the event had been decided.

The declarations particularly relied on in this connection are those contained in the deeds of Mead and of Aborn of the adjacent lands made in 1853 and later.

Mead & Granger's deed to the city of Providence, dated June 6, 1853, conveying the section of the gangway which was substituted for the first lay out of Pine street across the Mead land, refers to a plat of January, 1853, on which Pine street is shown to extend twenty feet wide to Long Wharf or Custom House street.

Wm. H. Aborn and another's deed to the city of Providence, June 6, 1853, conveying the first or southerly part of the gangway beginning at Aborn's gangway, refers to the same plat.         :

On July 11, 1853, the board of aldermen accepted as a public highway the twenty feet gangway as conveyed to the city for that purpose by deeds of Harkness, Aborn, Mead and Granger.

Aborn on Dec. 28, 1854, conveyed the westerly part of his land to the Bank of North America, and describes it as extending back easterly and bounding on "a new street twenty feet in width as now laid out and leading from Pine street to Long Wharf street."   Now Aborn and Mead at this time were owners each of 7 undivided 27th parts of the land now in question.   Hence it is said the present holder of their title

is estopped to deny that the gangway referred to is a public highway. We can see no ground for such a conclusion. Mead and Aborn could not have made a valid dedication of this strip of land by a direct deed to the city for highway purposes. To make such a deed effectual their co-tenants Bailey and Almy must have joined. Estoppel cannot vest a greater right than the person against whom it works is or at some time becomes entitled to. All co-tenants must join in a dedication to make it effectual. Allowing the fullest effects to these acts and declarations of his co-tenants as against them, Almy, for anything in these deeds, still owned as his private property, exempt from any easement in the public, an undivided interest and right of possession in the whole piece of land.

But it is urged further that the public acquired an easement by reason of a dedication to be inferred from the acts of all the parties including Almy. It is said that the public have used this strip of land as a highway with the consent of all the owners.

Upon this question the jury were properly instructed that they might find the easement to be established by twenty years adverse user under a claim of right, or by intentional dedication accepted by public user for any length of time.

The presiding justice was requested to charge "that the assent of the owner may be inferred from silence and the acquiescence in the public use."

The reply to this request was :

"I say that may be so, if it is of a sufficient character to show an intent on his part or a purpose on his part to abandon his own private control of the property and allow it to be appropriated to the public. The dedication may be inferred from the assent, if the assent appears to be given under such circumstances as to show the ultimate purpose of making a public highway instead of retaining private rights in it."

We think the instruction as given was right, leaving the jury to infer assent from silence and acquiescence or not after considering the circumstances and situation of the owner when the assent was supposed to have been given.

It is plain that assent to public use might be modified by circumstances which would irresistibly rebut an inference of dedication. And inasmuch as there was evidence in the case tending to show that the use of the strip in question by the public was accompanied by notice that the owners did not intend to make the way public, a charge in the words requested would have been misleading rather than instructive.

Neither can we say that the verdict of the jury upon the question of dedication was contrary to the evidence. There was evidence that the public have used the easterly twenty feet of this land to a considerable extent as a passway. There was also evidence that such use was only permitted when the owners and their tenants did not require the land for their own use—and that in many cases the use of the public was prevented by the occupation of the owners and persons employed about their affairs. It appears also in evidence that for many years signs had been maintained by one or another of the owners of this strip, so placed as to be obvious to passers by, announcing that the land in question was private property. The question as to the date when the first of these signs was put up was left to the jury, and it does not seem to us an unwarranted inference from the testimony that the date was about contemporary with the abandonment of the project for the extension of Pine street. Mr. Almy himself maintained one of these signs from 1869 till he died. This announcement that the land was private was a circumstantial and continuous denial that there was any intent to dedicate it to the public.

The defendants' argument is fallacious which assumes that the minds of the owners met in a dedication of the easterly twenty feet because all but Almy were willing to dedicate that twenty feet and Almy was willing to dedicate the whole forty. The facts show as we read them from the evidence that Almy wanted a way forty feet wide or none at all, and a consent to dedicate a way provided it shall be forty feet wide, does not imply a consent to dedicate a narrower way between the same termini. A street forty feet wide might

be considered very desirable while one only twenty feet wide might be very objectionable to the same person.

One exception is based on the admission of the question, "Did you ever know a time when there was not a sign there?" The question seems to us unobjectionable in any meaning which it can convey. As several of the witnesses understood it, it was very pertinent. They answer as if the inquiry was whether or not the signs were continuously kept up after they were first placed. Any use which could be made of this evidence by the complainant's counsel in his argument could be criticised by defendants' counsel, who made the closing argument to the jury. It is alleged also that the charge of the presiding justice placed undue stress upon the evidence of intention furnished by the sign put up by Mead, and omitted to call special attention to the evidence from which the jury should have fixed the date when it was put up. We think that this question was fairly put to the jury. The contentions of both parties were clearly stated and no evidence upon this question of date was specifically referred to.

Upon the second issue it is urged that the finding was contradictory to the statement of the only witness who testified about it. Mr. Mead's deposition, however, tends to show that Mr. Bailey is mistaken. It appears that Mead collected the money from Almy and agreed that Bailey should convey the land, and Mead positively denies that he ever agreed with Almy to open the street only to Aborn's gangway. Defendants' witness was testifying at the age of seventy-seven years, about transactions and impressions of forty years before. The fact that Almy bought the four feet next easterly of this strip when all parties expected Pine street to be extended, and this purchase would bring Almy's estate up to the extension, evidently outweighed with the jury the recollection of the witness.

We cannot say that they were mistaken in so weighing the evidence.

The allegation that the complainant's counsel misstated evidence to the jury is based on the following facts :

In the course of the trial both counsel read from the deposition of Mr. Mead taken in a former suit. According to the report taken by the stenographic clerk neither counsel read Mr. Mead's answers in full. It may be that the clerk omitted to take all that was read, inasmuch as the answers were already in writing ; but if omissions were made by both counsel, as the report now shows, neither party can now complain as they had opportunity to correct each other before the jury went out.

The petition for a new trial must be denied and dismissed.

*Benjamin N. Lapham,* for complainant.

*Joseph C. Ely & Herbert Almy,* for respondents.